43 F.3d 1484
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Ronney L. WARD, an individual, Plaintiff-Appellant,
v.
PARK AVENUE EXPLORATION CORPORATION, an Oklahoma
corporation, Defendant-Appellee.
 No. 94-6157.
 United States Court of Appeals, Tenth Circuit.
 Dec. 21, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before BRORBY and EBEL, Circuit Judges, and SAM,** District Judge.
 
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed.R.App.P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff Ronney L. Ward is a former employee of defendant Park Avenue Exploration Corporation. He brought the underlying lawsuit pursuant to the Fair Labor Standards Act (FLSA) to recover overtime compensation allegedly due from Park Avenue. The district court determined Ward was not entitled to additional pay because he was a "bona fide executive" during his tenure with the company. The court subsequently entered summary judgment in favor of Park Avenue. On appeal, Ward argues the district court erred in granting summary judgment because this case presents material issues of disputed fact. He also challenges the court's award of costs.
 
 
 4
 In February of 1990, Park Avenue hired Ward as an oil field pumper. At that time, the company was developing oil and natural gas properties in the Oklahoma City area. Ward's initial salary was $4,000 per month. This salary recognized his extensive experience and Park Avenue's desire that he provide training to newer pumpers coming on board. Within a month of Ward's initial employment, Park Avenue began hiring additional pumpers. They had little or no experience. The newer pumpers received salaries ranging from $1,800 to $2,300 per month. The record reveals that all the pumpers worked some overtime.
 
 
 5
 In the fall of 1992, the Department of Labor began an investigation focusing on Park Avenue's failure to pay pumpers overtime compensation. At that time, Ward submitted a partial claim for overtime to Park Avenue. There is some dispute over whether that claim was forwarded to the Department of Labor. It is undisputed, however, that the investigators did not consider Ward's claim in conjunction with those of the other employees. The other pumpers ultimately received payment for the overtime they worked in previous years. Park Avenue subsequently rejected Ward's overtime claim, prompting him to file this lawsuit.
 
 
 6
 We review the district court's summary judgment ruling de novo, applying the same standard as the district court under Fed.R.Civ.P. 56(c). James v. Sears, Roebuck & Co., 21 F.3d 989, 997-98 (10th Cir.1994). Under this standard, "[s]ummary judgment is appropriate if 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.' " Hagelin for President Comm. v. Graves, 25 F.3d 956, 959 (10th Cir 1994)(quoting Rule 56(c)), petition for cert. filed, (U.S. Nov. 2, 1994)(No. 94-796).
 
 
 7
 Materiality is the threshold inquiry when evaluating whether factual disputes will preclude summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. Thus, we must evaluate the substantive law to determine whether this case, which is rife with conflicting allegations, is appropriate for Rule 56(c) consideration.
 
 
 8
 An employee is exempt from FLSA coverage if he qualifies as a "bona fide executive." 29 C.F.R. 541.99(a). The regulations accompanying the statute define this employee as one whose "primary duty consists of the management of the enterprise in which employed or of a customarily recognized department or subdivision thereof and includes the customary and regular direction of the work of two or more other employees therein." 29 C.F.R. 541.119(a).[2] Under this definition, our focus is necessarily on whether the employee's main responsibilities were management-oriented.
 
 
 9
 The regulations accompanying the FLSA aid us in our review. Section 541.102(b) provides that tasks and responsibilities to look for as indicia of management status include 1) interviewing, selecting, and training employees, 2) setting and adjusting rates of pay, 3) directing work and maintaining production records, 4) appraising productivity, 5) handling complaints and grievances, 6) apportioning work, and finally, 7) controlling the use and distribution of supplies. 29 C.F.R. 541.102(b). Employees performing these tasks on a regular basis are generally viewed as bona fide executives.
 
 
 10
 In addition, section 541.103 defines the term "primary duty." It states, in relevant part:
 
 
 11
 [a] determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion.
 
 
 12
 Pursuant to this definition, consideration of whether an employee falls within the executive exemption must include examination of the particular duties he or she performs on a regular basis.
 
 
 13
 By its very terms, the "primary duty" analysis is fact-driven. See Department of Labor v. City of Sapulpa, 30 F.3d 1285, 1287 (10th Cir.1994); Foxworthy v. Hiland Dairy Co., 997 F.2d 670, 672 (10th Cir.1993); Reich v. Wyoming, 993 F.2d 739, 741 (10th Cir.1993); see also Shockley v. City of Newport News, 997 F.2d 18, 26 (4th Cir.1993)("the amount of time devoted to managerial duties, and the significance of those duties, present factual questions"). Likewise, consideration of whether an employee's duties were managerial necessarily implicates a factual inquiry. See City of Sapulpa, 30 F.3d at 1287 (noting that a "fact-sensitive inquiry is necessary" to evaluate management duties).
 
 
 14
 Analysis of an exemption claim is, therefore, twofold. First, the court must examine the primary duty and management components of the definition to make factual findings. Only then can the ultimate legal conclusion be drawn; that is, whether the exemption applies. See Foxworthy, 997 F.2d at 672; see also Dalheim v. KDFW-TV, 918 F.2d 1220, 1226 (5th Cir.1990)(describing the critical analysis involved in evaluating exemption claims). Undoubtedly, a situation could arise under this scenario where summary judgment is proper due to the nature of the evidence presented. This is not, however, such a case.
 
 
 15
 The district court held there was no dispute about the nature of Ward's duties. We must disagree. The record provides that Ward disputed virtually every contention Park Avenue made with respect to his job duties and responsibilities. In particular, he challenges the company's assessment that he regularly had significant input into hiring and firing decisions. He also disputes the company's statements regarding the level of discretion he had to make decisions and supervise projects and other pumpers. He maintains that sixty percent of his time was spent doing exactly what the other pumpers did. The affidavits and deposition testimony he has submitted do lend some support to these allegations.
 
 
 16
 Under the summary judgment standard, we must construe the facts, and any inferences drawn from them, in the light most favorable to Ward. Blue Circle Cement, Inc. v. Board of County Comm'rs., 27 F.3d 1499, 1503 (10th Cir.1994). The contentions described above speak directly to Ward's particularized duties. They are, furthermore, material to his claim that he was not a manager.[3] Based on our review of the record, we conclude there are sufficient material and genuine factual disputes regarding Ward's claim to render this case inappropriate for summary judgment. In light of our disposition, we do not reach Ward's argument regarding costs.
 
 
 17
 The judgment of the district court is REVERSED, and this matter is REMANDED for further proceedings consistent with this order and judgment.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable David Sam, District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 [2]
 This section applies specifically to employees compensated at a rate of $250 per week or higher. It is known as the "short test." The parties agree that Ward met this earnings requirement
 
 
 [3]
 Ward argues he was, at most, a "working foreman" and therefore covered under the FLSA. See 29 C.F.R. 541.115(a). In light of our disposition, we need not determine whether he was a foreman or strawboss under the regulations. Given the level of his salary, however, it appears that working foreman status would not necessarily preclude him from being a bona fide executive. See Martin v. Tango's Restaurant, Inc., 969 F.2d 1319, 1325 (1st Cir.1992)