FILED
United States Court of Appeals
Tenth Circuit

January 4, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL MAESTAS; THOMAS
MAY; JUANITO MARQUEZ;
JAHMAAL GREGORY, on behalf of
themselves and all others similarly
situated,

     Plaintiffs−Appellants,

v.

DAY & ZIMMERMAN, LLC; SOC,
LLC,

     Defendants−Appellees.

No. 10-2280

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:09-CV-00019-JCH-LFG)**

---

Darrell M. Allen (Hannah B. Best, Hannah Best & Associates, with him on the briefs),
Albuquerque, New Mexico, for the Plaintiffs-Appellants.

Whitney Warner (Christopher M. Moody with her on the brief), Moody & Warner, P.C.,
Albuquerque, New Mexico, for the Defendants-Appellees.

---

Before **KELLY**, **LUCERO**, and **GILMAN**,[*] Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Plaintiffs, officers in a private security force that protects Los Alamos National Laboratory, contend that their employer Day and Zimmerman, LLC, and SOC, LLC, (collectively "SOC") improperly classified them as exempt employees under the Fair Labor Standards Act ("FLSA"), 28 U.S.C. § 201 et seq. Ruling on their contentions, the district court concluded that all plaintiffs were exempt executive employees and granted summary judgment to SOC.

The parties disagree over which of plaintiffs' job duties is "primary," a determination essential to the classification of their positions under FLSA. We hold that such a dispute presents a question of fact rather than an issue of law. We further hold that an employee who supervises subordinates while also conducting front-line law-enforcement work performs a non-managerial task. Because there remains a genuine dispute as to whether three of the plaintiffs had this task as their primary duty, summary judgment was proper only against plaintiff Thomas May and improper as to the other plaintiffs. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse

---

[*] The Honorable Ronald Lee Gilman, United States Circuit Court Judge for the Sixth Circuit, sitting by designation.

in part.

# I

SOC's private security force provides crucial, around-the-clock protection to the Los Alamos National Laboratory. The force has a hierarchical, military-style structure. At the lowest level of the hierarchy are security officers ("SOs") and security police officers ("SPOs"). SOs and SPOs, who are unionized and non-exempt employees, are supervised by three ranks of field supervisors: lieutenants, captains, and majors, in ascending order. All field supervisors maintain the same certifications as SOs and SPOs, including first responder training, respirator training, and hazardous materials training. In addition, all field supervisors must have some supervisory experience and must complete a basic supervisory course on leadership, management, and administration. Field supervisors, like all members of the force, wear uniforms and work in shifts. In addition to the field supervisors, SOC employs higher-level managers. Unlike field supervisors, these managers do not work in shifts, do not wear uniforms, and do not work in the field.

Plaintiff Michael Maestas is a Field Operations Department ("FOD") lieutenant. During a shift, lieutenants like Maestas check every post in their assigned zone to ensure that the post is appropriately staffed. If the post is not adequately staffed, Maestas is expected to fill in at the post until it can be appropriately filled. During daily formation, Maestas conducts visual examinations of his subordinates to ensure their fitness for duty. If Maestas suspects that a subordinate is not fit for duty, he notifies his major. At that

point, Maestas or his major must complete an incident report, and either supervisor may recommend disciplinary action. At least twice a day, Maestas is required to conduct "On Shift Performance Assessments" of subordinates, which test their knowledge and abilities. When Maestas was promoted from SPO to lieutenant, he received a ten percent pay raise.

As a lieutenant, Maestas also conducts and supervises alarm maneuvers. When an alarm sounds, he is responsible for responding. Maestas may order an SPO to investigate the alarm or investigate it himself. In the event of an emergency, Maestas is expected to direct the response and coordinate with outside emergency personnel. Although he retains the ability to personally respond to any type of emergency, he is expected to remain in charge of the situation whenever possible.

Plaintiff Juanito Marquez is also a lieutenant, but his position combines the duties of a FOD lieutenant and a Shift Administration and Systems Supervisor ("SASS") lieutenant. He spends approximately 50 to 60 percent of his time in the field as an FOD lieutenant, filling a similar role to that of Maestas. Marquez testified that, as an FOD lieutenant, he spends 5 to 10 percent of his time checking on his subordinates and the rest of his time patrolling his zone. When he is not working as a FOD lieutenant, Marquez works in the office as a SASS lieutenant. As a SASS lieutenant, Marquez is a "scheduling specialist." He is responsible for ensuring that an appropriate SPO or SO is assigned to every post, handling requests for time off, and ensuring compliance with the collective bargaining agreement. Marquez also received a 10 percent pay raise when he

was promoted to lieutenant.

Plaintiff Jahmaal Gregory is a captain. As a captain, Gregory oversees fifteen SPOs and three lieutenants. He is the highest commanding officer in his zone of the facility during his shifts. Gregory is responsible for supervising the daily work of his subordinates, implementing policies handed down by upper management, reporting on personnel incidents in the field, and recommending discipline or changes in SOC policies. In an emergency, Gregory is expected to command the response of his subordinates from a remote location. He would not personally address any emergency unless it occurred in his immediate vicinity.

Plaintiff Thomas May is one of SOC's six majors. As a major, May reports directly to upper management and is the highest-ranking person in the field during his shift. May spends the first few hours of his shift distributing weapons to incoming employees and collecting weapons from outgoing employees. He is also responsible for briefing his subordinates at the beginning of their shift. May spends the majority of his shift at headquarters, overseeing all of the employees in the field. When a problem with a subordinate arises, May investigates the incident and reviews any disciplinary recommendations made by lower-level supervisors before referring the situation to upper management. In an emergency, he is expected to coordinate the employees' response rather than personally attending to the situation.

The plaintiffs argue that they are non-exempt employees because they are "first

responders" under 29 C.F.R. § 541.3(b),[1] and are thus owed overtime pay.  On a motion

for summary judgment, SOC argued that the plaintiffs were not first responders and

instead fell under either the executive, administrative, or combination exemptions.  See

29 C.F.R. § 541.100 (executive exemption); § 541.200 (administrative exemption); §

541.708 (combination exemption).  The district court determined that plaintiffs were

executive employees, and not first responders, and granted summary judgment to SOC.

## II

We review the district court's summary judgment grant de novo.  Bohn v. Park

City Group, 94 F.3d 1457, 1460 (10th Cir. 1996).  SOC is entitled to summary judgment

if there is no dispute of material fact and it is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  It is the employer's burden to prove that an employee falls "plainly

and unmistakably" within a FLSA exemption.  Rodriguez v. Whiting Farms, Inc., 360

F.3d 1180, 1184 (10th Cir. 2004).

## A

The dispute over plaintiffs' primary duties is decisive in this case.  In order to fall

under the executive, administrative, or combination exemptions to FLSA's overtime

protections, an employee's primary duty must be managerial or administrative, or a

---

[1] Although the regulation itself does not use the term "first responder," the term
has been widely used to refer to employees covered by that regulation.  See, e.g., Mullins
v. City of New York, 653 F.3d 104, 107 (2d Cir. 2011).

combination of the two.[2]  See 29 C.F.R. § 541.100(a)(2) (executive employees' primary duty must be "management of the enterprise"); § 541.200(a)(2) (administrative employees' primary duty must be "office or other non-manual work directly related to . . . management or general business operations"); § 541.708 ("[A]n employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for an exemption.").  However, if an employee's primary duty is related to emergency response or law enforcement, the employee is entitled to FLSA's protections.  29 C.F.R § 541.3(b).

In FLSA cases, a court must first determine the employee's primary duty, and then determine whether that primary duty disqualifies the employee from FLSA's protections. See Foxworthy v. Hiland Dairy Co., 997 F.2d 670, 672 (10th Cir. 1993) ("In determining whether an employee falls within an exemption to FLSA, the district court must first make findings as to certain factors, and then apply a legal standard.").  Time spent performing each duty is a "useful guide" in examining which duty is primary, but there is no requirement that an exempt executive employee spend more than half her time on managerial tasks.  29 C.F.R. § 541.700(b).  The regulations also require consideration of "the relative importance of the exempt duties as compared with other types of duties; . . . the employee's relative freedom from direct supervision; and the relationship between the

_____

[2] The primary duty component is a necessary, but not sufficient, part of each test. Plaintiffs do not contest the district court's finding that they meet the other requirements of the executive exemption. They do not address the other requirements of the administrative and combination exemptions.

employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." § 541.700(a). Thus, for example, if an employee spends 40 percent of her time performing managerial work and 60 percent on non-managerial work, the employee's managerial work may still be considered her "primary duty" if she enjoys a significant degree of independence and is paid a substantial premium for her non-managerial work.

The first responder regulation does not alter the primary duty test. See Wage & Hour Division, Dep't of Labor, Opinion Letter Dated Oct. 4, 2005, 2005 WL 3308611 at *2-3. Thus, high-level employees who perform some first responder duties, like police lieutenants or fire chiefs, can nonetheless be exempt executives if their primary duty is managerial and they meet the other elements of the test. Id.

The plaintiffs do not materially contest any of the employer's factual claims about the employees' job duties, some of which are managerial and some of which relate to first response. However, the parties sharply dispute which of plaintiffs' duties are primary under FLSA. SOC asserts that plaintiffs' primary duty is their managerial work, while the plaintiffs claim that it is their first responder responsibilities. Thus, the parties do not only disagree on how to characterize the employees' primary duties; they disagree on which duties are primary. We conclude that such a dispute is a factual one that, if genuine and material, precludes summary judgment.

A careful reading of Icicle Seafoods v. Worthington, 475 U.S. 709 (1986), a case relied upon by the district court, supports this conclusion—that is, that the primary duty

determination is a factual one. In that case, the Ninth Circuit disregarded factual findings made by the district court as to whether plaintiff-employees were exempt "seamen" under FLSA. Id. at 713. Instead, the circuit court determined that the dispute could be solved only by looking to the primary duties of the employees—the core issue in the case before us. Id. After analyzing the record under this new standard, the circuit court concluded that the plaintiffs' "dominant employment" was "industrial maintenance," and that the employees' actual maritime work was merely incidental. Id. The Supreme Court reversed, holding that the Ninth Circuit engaged in improper factfinding by independently answering the "dominant employment" question. Accordingly, the case was remanded to the district court to properly make this factual determination. Id. at 714.

Case law from this circuit and others further supports the conclusion that the question of which duty is the "primary duty" is a question of fact. See Dep't of Labor v. City of Sapula, 30 F.3d 1285, 1287 (10th Cir. 1994) ("A fact-sensitive inquiry is necessary" to determine which duty is primary); Ward v. Park Ave. Exploration Corp., No. 94-6157, 1994 WL 708187, at *2 (10th Cir. Dec. 21, 1994) (unpublished) ("By its very terms, the 'primary duty' analysis is fact driven."); Schokley v. City of Newport News, 997 F.2d 18, 26 (4th Cir. 1993) ("[T]he amount of time devoted to managerial duties, and the significance of those duties, present factual questions . . . ." (emphasis added)).

Therefore, the district court erred in concluding that the primary duty analysis presents a legal question. Because the primary duty inquiry presents a question of fact,

summary judgment is proper only if there was no genuine dispute regarding plaintiffs' primary duties.[3]  Fed. R. Civ. P. 56(a).

**B**

Under the regulations, management duties include training employees, directing the work of employees, evaluating the work of employees, maintaining records for use in supervision or control, disciplining employees, and apportioning work among employees. 29 C.F.R. § 541.102.  Administrative duties include work in areas like accounting, insurance, marketing, human resources, labor relations, and database administration.  29 C.F.R. § 541.201(b).   On the other hand, non-exempt first responder duties include "rescuing fire, crime, or accident victims," "performing surveillance," "preparing investigative reports," and other like activities that are normally performed by police officers, paramedics, firefighters, and similar personnel.  29 C.F.R. § 541.3(b)(1).

Although the first responder regulation reaffirms the primary duty test, it changes the analysis in a subtle but significant way:  It states that first responders are not exempt executives even if they "also direct[] the work of other employees in the conduct of an

---

[3] This procedural posture renders SOC's reliance on an unpublished district court case misplaced.  See Bullard v. Babcock & Wilcox Technical Servs. Pantex, No. 2:07-CV-049-J, 2009 WL 1704251 (N.D. Tex. June 17, 2009) (unpublished), rev'd on other grounds sub nom. Stokes v. BWXT Pantex, L.L.C., 424 F. App'x 324 (5th Cir. 2011) (unpublished).  In that case, the court made the factual primary duty determination after a bench trial.  See WL 1704251 at *1; cf. Crawford v. Lexington-Fayette Urban Cnty. Gov't, No. 09-299-JBC, 2008 WL 2598345, at *6 (E.D. Ky. June 25, 2008) (unpublished) (holding that summary judgment is not appropriate against correctional facility lieutenants and captains because of factual dispute as to whether managerial or first responder duties were primary).

investigation or fire."  29 C.F.R. § 541.3(b)(2).  As the Secretary of Labor recently

explained in relation to New York City police sergeants, "field law enforcement work

does not become management simply because the police officer directs the work of other

employees while performing such work."  Brief for Sec'y of Labor as Amicus Curiae at

5, Mullins v. City of New York, 653 F.3d 104 (2d Cir. 2011) (No. 09-3435-cv) (per

curiam) (quotation omitted).[4]  In other words, although "directing the work of

employees" is normally a managerial duty, it is not a managerial duty when it is

performed concurrently with front-line law enforcement work.

Nonetheless, some duties performed by high-ranking public safety officers are

bona fide managerial duties, such as:  "evaluating personnel performance," "making

recommendations as to hiring, promotion, discipline, or termination," "coordinating and

implementing training programs," "maintaining inventory of property and supplies,"

"maintaining operational readiness through supervision and inspection of personnel,

equipment and quarters," "deciding how and where to allocate personnel," and "directing

operations" at emergency scenes, "including deciding whether additional personnel or

_____

[4] The brief is available at http://www.dol.gov/sol/media/briefs/mullins%28A%29-3-17-2011.htm.  The Second Circuit deemed the Secretary's interpretation worthy of "controlling" deference under Auer v. Robbins, 519 U.S. 452 (1997), and held that the police sergeants were non-exempt first responders.  Mullins, 653 F.3d at 114.  SOC urges us to disregard the Secretary's Mullins brief as inconsistent with earlier DOL interpretations.  This argument is without merit.  The brief explains and highlights part of the 2004 regulation that has not been the subject of previous DOL opinions.  We need not decide what level of deference we owe this interpretation because, even as a purely rhetorical matter, it is a persuasive reading of the regulation.

equipment is needed." Defining and Delimiting the Exemption for Executive,

Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg.

22,122, 22,130 (April 23, 2004) (citing cases with approval).

For field supervisors like plaintiffs, who direct the work of subordinates but also

perform at least some first responder duties themselves, the distinction appears to be quite

fine. On one hand, directing the work of subordinates while simultaneously performing

first responder activities does not qualify as a managerial duty. On the other hand,

"directing operations" at an emergency scene is a managerial duty. The distinction

appears to hinge on whether the supervisors engage in the same front-line activities as

their subordinates on a daily basis. See 29 C.F.R. § 541.3(b)(2) (a field supervisor who

"also directs the work" of subordinates while engaging in front-line first responder

activities herself is not exempt (emphasis added)).

### III

Because the primary duty determination is a factual one, summary judgment is

appropriate only if all reasonable factfinders would conclude that the managerial portions

of plaintiffs' jobs are their "primary duties." SOC bears the burden of producing

evidence that "plainly and unmistakably" shows that its position is correct, Rodriguez v.

Whiting Farms, Inc., 360 F.3d at 1184; any gaps in the evidence work in plaintiffs' favor.

We now consider if SOC has shouldered this heavy burden, keeping in mind the factors

relevant to the primary duty determination: the amount of time devoted to each task, the

relative importance of each task, the degree of freedom from direct supervision, and the

pay relative to subordinates.  29 C.F.R. § 541.700.

## A

Summary judgment was clearly improper as to plaintiff Maestas, a full-time field lieutenant.  Like all plaintiffs, Maestas performs a mix of managerial duties, such as ensuring that his subordinates are well-prepared, and first responder duties, like patrolling his zone and responding to emergencies.  He also has some administrative duties, like creating schedules.  In an emergency he is expected to direct the work of his subordinates in the field—an activity the first responder regulation deems non-managerial.

The only evidence of the manner in which field lieutenants divide their time comes from the deposition of plaintiff Marquez, who holds a hybrid position and spends approximately half of his time as a field lieutenant.  Marquez testified that in his capacity as a field lieutenant, he spends only five to ten percent of his time checking on subordinates and the remainder of his time patrolling his zone.  This fact alone, which was overlooked by the district court, precludes summary judgment.  The other primary duty considerations similarly weigh against a summary judgment grant.  The relative importance of Maestas' managerial, administrative, and first responder duties is debatable.   And the strict hierarchical structure of the security force also suggests that field lieutenants do not enjoy significant freedom from supervision.  Finally, field lieutenants appear to receive only ten percent more in salary than their non-exempt subordinates.  A rational factfinder could rely on these facts to find that lieutenants' primary duty is patrolling.

- 13 -

We note that Major May—a former lieutenant himself—testified that a lieutenant's "primary responsibility . . . is to make sure that their people in the field can handle any situation that happens at any time."  Although this statement could be read as a concession that lieutenant's primary duty is the managerial duty of ensuring operational readiness, it is far from unambiguous.  His description does not preclude a finding that the lieutenants' primary duty is the kind of front-line supervision that the first responder regulation deems non-managerial.  Moreover, the record contains numerous statements from plaintiffs that their primary duty is to protect the laboratory.  Viewing the record in the light most favorable to the employees, May's singular statement does not alter our conclusion.  Accordingly, summary judgment against Maestas was improper.

**B**

Plaintiff Marquez spends 50 to 60 percent of his time as a field lieutenant, and the remainder as a "scheduling specialist," working in the office.  His office duties, which include assigning subordinates to open posts, handling employee grievances, and ensuring compliance with the collective bargaining agreement, are administrative within the meaning of 29 C.F.R. § 541.200(a)(2).[5]  Nonetheless, given Marquez's approximately equal division of time between his field lieutenant and scheduling specialist duties, there remain genuine questions about which of his duties are primary.  Because Marquez's

---

[5] Because we conclude that SOC has not proven at this stage that Marquez's primary duty is administrative, we do not consider whether he meets the other requirements of the administrative exemption.  See 29 C.F.R. § 541.200(a)(2).

- 14 -

responsibilities as a field lieutenant are the same as those of Maestas, SOC has failed to carry its burden for substantially the same reasons. A reasonable factfinder could conclude that Marquez's primary duties were first response, and it was error for the district court to conclude otherwise. We therefore reverse the grant of summary judgment against plaintiff Marquez.

## C

The third plaintiff, Captain Gregory, holds the rank immediately above lieutenant. He spends his entire shift in the field as the commander of his zone. Although he is responsible for ensuring the operational readiness of his subordinates by performing checks and administering readiness tests—both bona fide managerial duties—he also directs the response of his subordinates working alongside them in the field—a first responder duty.

SOC has not presented evidence as to the manner in which Gregory divides his time between these duties. A consideration of the other primary duty factors is also inconclusive. As the lead commander in the zone, he certainly enjoys more freedom from direct supervision than a field lieutenant. However, the extent of this freedom is less than clear. And the record does not contain any evidence concerning Gregory's pay premium. Without this information—which is necessary to make a proper primary duty determination—summary judgment was inappropriate. Accordingly, we reverse as to plaintiff Gregory.

**D**

The final plaintiff is Major May, the highest-ranking field officer. In contrast to evidence about Captain Gregory, SOC has provided more information about how May spends his days. May leads the daily briefing of all captains, lieutenants, and subordinate officers. He then spends roughly three hours distributing and collecting weapons from subordinates. When not performing the aforementioned tasks, May spends the "majority" of his time in headquarters, supervising the entire shift. These are all management duties. Although May takes orders from upper management, he is the highest-ranking official in the field whenever he works and thus enjoys a greater degree of independence and discretion than the subordinate officers. Even though there is no evidence of May's salary premium, it is clear that his managerial duties are primary. Thus, unlike the other plaintiffs, the district court was correct to grant summary judgment against Major May.

**IV**

Accordingly, we **REVERSE** the district court's grant of summary judgment against plaintiffs Maestas, Marquez, and Gregory and **AFFIRM** the grant of summary judgment against plaintiff May. We **REMAND** for further proceedings.