Tammie **HINELY** and Jesus Sanchez, individually and on behalf of others similarly situated, Plaintiffs,

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,** Defendant.

Civil Action No. 15–cv–00519–PAB–MEH

United States District Court, D. Colorado.

Signed September 23, 2016

Andrew Curry Quisenberry, Bachus & Schanker, LLC, James L. Abrams, James L. Abrams, Attorney at Law, Robert L. Allman, Allman, Mitzner & Fawley, LLC, Denver, CO, for Plaintiffs.

Mary L. Will, Michael S. McCarthy, Thomas William Carroll, Faegre Baker Daniels LLP, Denver, CO, for Defendant.

### ORDER

PHILIP A. BRIMMER, United States District Judge

This matter is before the Court on the Motion for Summary Judgment and Supporting Brief [Docket No. 43] filed by defendant American Family Mutual Insurance Company ("American Family"). Plaintiffs Tammie Hinely and Jesus Sanchez filed this action on March 12, 2015, alleging two claims: (1) violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., for failure to pay plaintiffs all of their time worked, including overtime, Docket No. 1 at 8, and (2) unjust enrichment. Id. at 10.

On November 25, 2015, defendant filed the instant motion for summary judgment

on plaintiffs' claims, arguing that plaintiffs' FLSA claim fails because plaintiffs are subject to the administrative exemption to the overtime requirement. Docket No. 43 at 9.[1] Plaintiffs argue that they "are properly classified as non-exempt workers, based upon their duties being limited to statutorily limited medical payment ... and no-fault personal injury protection ... claims related to auto accidents." Docket No. 50 at 1.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND [2]

American Family is an insurance company that provides property and casualty insurance for losses involving customers' vehicles and homes. Docket No. 43 at 2, Statement of Undisputed Material Fact ("SUMF") 1. American Family's insurance products include Personal Injury Protection ("PIP") coverage. Id., SUMF 2. PIP is a type of auto insurance that provides first-party coverage for people who suffer bodily injuries in auto accidents. Id. PIP coverage generally provides compensation for accident-related medical expenses and lost wages, among other benefits. Id. The type of benefits payable under PIP, and the people afforded PIP benefits, vary by state. Id.

American Family employs claims adjusters to make claims determinations and pay benefits under American Family's insurance policies, including its policies with PIP coverage. Id., SUMF 3. These claims adjusters perform non-manual office work. Id.

---

1. Defendant also argues plaintiffs' unjust enrichment claim fails as a matter of law because it is pre-empted by the FLSA. Docket No. 43 at 17. In their response, plaintiffs state that they withdraw their unjust enrichment claims. Docket No. 50 at 2. Accordingly, defendant's summary judgment motion is moot as to plaintiffs' unjust enrichment claims.

2. The following facts are undisputed unless otherwise indicated.

Ms. Hinely was hired by American Family on December 18, 2006. Docket No. 43 at 3, SUMF 5. Ms. Hinely left her employment at American Family on May 23, 2014. *Id.*, SUMF 6. From 2012 until her last day of employment, American Family paid Ms. Hinely at least $63,965 in annual salary. *Id.*, SUMF 7.

Mr. Sanchez was hired by American Family on October 23, 2006. *Id.*, SUMF 8. Mr. Sanchez left his employment at American Family on July 16, 2014. *Id.*, SUMF 9. From 2012 until his last day of employment, American Family paid Mr. Sanchez no less than $53,820 in annual salary. *Id.*, SUMF 10.

At all times relevant to this lawsuit, plaintiffs worked as claims adjusters in American Family's PIP unit. Docket No. 43 at 2, SUMF 4. Specifically, Ms. Hinely began working on PIP claims in 2010 and Mr. Sanchez began working on PIP claims in March 2012. *Id.* at 2–3, SUMF 4. During the time period relevant to this case, plaintiffs held the same job within American Family's PIP unit: Casualty Claim Desk Adjuster and, after April 2013, Casualty Claim Adjuster. *Id.* at 3, SUMF 11. Plaintiffs' job titles changed in April 2013 as part of a company-wide specialization initiative. *Id.* at 4, SUMF 12. Previously, PIP adjusters could have different titles and positions; for example, Casualty Claim Desk Adjuster and Casualty Claim Desk Senior Adjuster. *Id.* However, after April 2013, all PIP adjusters were classified as Casualty Claim Adjusters and the "senior" title was no longer used. *Id.*

In 2012, 2013, and 2014, Mr. Sanchez was responsible for approximately 120 to 150 claims at any given time; Ms. Hinely was responsible for 140 to 200 claims at any given time. Docket No. 43 at 4, SUMF 15. Plaintiffs "had payment authority of $10,000 (Hinely) and $3,000 (Sanchez) for medical bills and $1,500 for wage loss (both), within which they could pay claims without talking to a manager." Docket No. 43 at 8, SUMF 28.[3] Plaintiffs provided recommendations to their supervisors regarding when independent medical examinations were appropriate on their claims. Docket No. 43 at 7, SUMF 24; Docket No. 50 at 5. Plaintiffs did not investigate or determine liability, *see* Docket No. 50 at 7, ¶ 1, go outside the office to interview witnesses, prepare damage estimates, *id.*; ¶ 2, or negotiate coverage. *Id.*, ¶ 3.

## II. STANDARD OF REVIEW

■ Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

■ Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's

---

**3.** Plaintiffs state that this statement is "misleading," Docket No. 50 at 6, but do not dispute the facts contained therein with any specific references to materials in the record.

claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. ANALYSIS

■ Under the FLSA, an employer must pay an employee overtime compensation at a rate not less than one and one-half times the employee's regular rate of employment for all hours that the employee works in a given work week above 40 hours. 29 U.S.C. § 207(a)(1) (the "overtime requirement"). The FLSA includes a number of exemptions to the overtime requirement. The exemption relevant to this case is the so-called "administrative exemption," which applies to "any employee employed in a bona fide ... administrative ... capacity." 29 U.S.C. § 213(a). Regulations promulgated by the Department of Labor define an administrative employee as any employee:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). "Exemptions are to be narrowly construed, and the employer bears the burden of showing the employee fits plainly and unmistakenly within the exemption's terms." *Spradling v. City of Tulsa, Okla.*, 95 F.3d 1492, 1495 (10th Cir. 1996).

■ Plaintiffs do not dispute that they satisfy the minimum salary requirements of an administrative employee but argue that their primary duties were not directly related to management or general business operations, Docket No. 50 at 13–14, and did not involve the exercise of sufficient discretion and independent judgment on matters of significance to render them exempt from the overtime requirement. *Id.* at 14–20.

### A. Whether Plaintiffs' Duties Were Directly Related to Management or General Business Operations

The second element of the administrative exemption test is whether plaintiffs' primary duty is the performance of work "directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2).

The phrase "directly related to the management or general business operations"

refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

*Id.*, § 541.201(a).[4]

"The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Although "[t]he amount of time spent performing exempt work can be a useful guide" in determining an employee's primary duty, "[t]ime alone ... is not the sole test." *Id.*, § 541.700(b). Factors to consider include "the relative importance" of any exempt duties "compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.*, § 541.700(a). "[T]he question of which duty is the 'primary duty' is a question of fact." *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 828 (10th Cir. 2012).

"Insurance claims adjusters" are listed as an example in 29 C.F.R. § 541.203(a) of employees who generally meet the administrative exemption, provided that their duties include "interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendation regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation."

Defendant argues that plaintiffs' primary duty was work directly related to the management or general business operations of American Family. Docket No. 43 at 11. Defendant states that it "undisputed that American Family is in the business of selling insurance policies" and that plaintiffs "performed office or non-manual work." *Id.* at 12. Defendant claims that plaintiffs' duties included

perform[ing] American[ ] Family's claims-handling function, including processing of claims; representing the company through the process of gathering evidence; reviewing the insurance policy; determining whether there is coverage; evaluating liability; making a decision on whether and how much to pay a claim; establishing reserves; making recommendations on claims where necessary; and negotiating on behalf of the company.

*Id.* Defendant cites two opinions, *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119, 1131 (9th Cir. 2007), and *In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*, No. 06-cv-17430-WYD-CBS, 2007 WL 2936319, at *8 (D. Colo. Oct. 9, 2007), which found insurance claim adjusters performed duties "directly related" to management policies or general business operations. Docket No. 43 at 12.

Plaintiffs respond by citing a 2002 Department of Labor Opinion letter (the

---

4. Examples of work "directly related to management or general business operations" include, but are not limited to, "functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b).

"2002 Opinion Letter"), which "identified several duties performed by claims adjusters that related to 'servicing the business.'" Docket No. 50 at 14. Plaintiffs contend that "these enumerated duties do not apply to these Plaintiffs, with their limited job duties, but [plaintiffs] do recognize that they provide a service." *Id.*

The 2002 Opinion Letter was prepared in response to a "request for an opinion regarding the exempt status of certain insurance claims adjusters under the [FLSA]." 2002 WL 32406601 (Dep't of Labor Nov. 19, 2002). The 2002 Opinion letter was based on the following factual predicates:

> the adjusters in question are primarily involved with the investigation and evaluation of insurance claims .... the adjusters gather the facts by interviewing the insureds, witnesses, and physicians; they also may visit the scene of the event, inspect property damage, and take and review photographs. The adjusters then weigh the factual information and prepare damage estimates. In doing so, they consider a variety of losses such as time lost from work, damages to personal property, the nature and extent of bodily injury, medical bills, and pain and suffering. They also must evaluate whether there is coverage for the claim under the policy. Therefore, the adjusters must be knowledgeable in the areas of various state laws pertaining to insurance and theories of liability and tort law.
>
> After determining coverage, liability and the total value of the claim, the adjusters establish the level of company reserves for the claim. They then attempt to negotiate settlements with the insured or with the third-party claimant. They have full authority to settle claims

within their established authority, and they recommend resolutions to their supervisors for more costly claims, which are generally approved. If their negotiations are unsuccessful, the adjusters advise the company on whether to settle the claim or to pursue litigation. If a claim results in litigation, the adjusters collaborate with counsel and make recommendations in preparation for litigation. In that situation, claims adjusters may be deposed and may testify at the trial.... the adjusters remain primarily responsible for resolving a claim, even when it is in litigation and the policyholder or the third-party claimant is represented by an attorney.

2002 WL 32406601, at *1. The Department of Labor determined that the claims adjusters performed many duties related to servicing the business, specifically

> planning the processing of a claim from the beginning to the end, whether it is easily and quickly resolved or whether it proceeds to litigation. They represent the company and advise the management throughout the process of gathering the evidence, assessing credibility, reviewing the insurance policy, determining whether there is coverage, evaluating liability, making a decision on whether and how much to pay on the claim, establishing a reserve for the case, making a recommendation on claims above their established authority, and collaborating with the company's counsel if the case results in litigation. They also negotiate on behalf of the company with the claimant, whether the claimant is a policyholder or a third-party claimant.

2002 WL 32406601, at *2.

Here, plaintiffs did not perform all of the same duties as the claims adjusters discussed in the 2002 Opinion Letter.[5] It is

---

5. Both cases cited by defendant as support for its position that claims adjusters performed

duties "directly related" to management poli-

undisputed that plaintiffs did not investigate or determine liability, *see* Docket No. 50 at 7, ¶ 1, interview witnesses other than policyholders by telephone, prepare damage estimates, *id.*, ¶ 2, or negotiate coverage. *Id.*, ¶ 3. There is no indication that plaintiffs participated in litigation. However, it is unnecessary for defendant to show a precise overlap between plaintiffs' duties and those listed in the 2002 Opinion Letter in order to establish that plaintiffs' primarily performed duties directly related to defendant's management or business operations. *See In re American Family Mut. Ins. Co.*, 2007 WL 2936319, at *8 (noting that plaintiffs' "primary job duties do not include many of the examples cited in the 2002 Opinion letter" and determining that defendant had satisfied its burden under the second prong of the administrative exemption); *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, 481 F.3d at 1129 ("The regulation, however, does not require the adjuster to perform each and every activity listed.").

In *In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*, the Court found that it was

> undisputed that Plaintiffs' primary job duties are to act as representatives of American Family, process their assigned claims from beginning to end, and resolve claims in a manner that places the insured or claimants in the position they were in before the accident, within the parameters of the policy and American Family's regulations.

2007 WL 2936319, at *8. Based on these undisputed facts, the court found that the plaintiffs were "responsible for 'servicing American Family's claims handling process, and their duties are 'administrative' in nature as described in the 2002 Opinion Letter." *Id.* The court reached this conclusion "despite the fact that many of the tasks they perform are routine and other, more senior American Family employees are responsible for developing claims service policies and procedures." *Id.*

In *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585 (5th Cir. 2006), the Court found that the claims adjuster plaintiffs "advised the management, represented Allstate, and negotiated on Allstate's behalf" and determined that these duties were directly related to the employer's management policies or general business operations.

As in *Cheatham* and *In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*, it is undisputed that plaintiffs represented defendant to outside entities in the course of processing claims, *see* Docket No. 43 at 6, SUMF 22; Docket No. 50 at 4–5; Docket No. 50–1 at 2–3, ¶ 5; Docket No. 50–2 at 1–3, ¶¶ 3, 6, and that they advised management during the claims settling process. Docket No. 50 at 17; *see* Docket No. 50–1 at 3, ¶ 6; Docket No. 50–2 at 2, ¶ 4. However, unlike *Cheatham* and *In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*, it is also undisputed that plaintiffs did not negotiate coverage, Docket No. 56 at 4–5, ¶ 3; *see* Docket No. 43 at 8, SUMF 27; Docket No. 50–1 at 4, ¶ 9; Docket No. 50–2 at 3–4, ¶ 10, and that they were unable to close files on their own. Docket No. 50–1 at 3, ¶ 6, Docket No. 50–2 at 2, ¶ 4. Thus, plaintiffs did not handle claims from start to finish. Moreover, there are additional factual disputes regarding plaintiffs' actual primary job duties as compared to the duties discussed in the 2002 DOL Opinion Letter. For example, the parties dispute whether plaintiffs set reserves, Docket No. 43 at 7, SUMF 23; Docket No. 50–1 at 7, ¶ 21; Docket No. 50–2 at 4–5, ¶ 13, and

cies or general business operations cite and rely on the 2002 Opinion Letter. *See In re Farmers Ins. Exch. Claims Representatives'*

*Overtime Pay Litig.*, 481 F.3d at 1128; *In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*, 2007 WL 2936319, at *6.

investigated claims. Docket No. 43 at 5–6, SUMF 20; Docket No. 50 at 4; Docket No. 50–1 at 6, ¶ 18; Docket No. 50–2 at 3, ¶ 6.

To be entitled to summary judgment, defendant must demonstrate that no reasonable juror would find that plaintiffs' primary duties were unrelated to American Family's management or general business operations. Because the Court finds that defendant has not satisfied its burden of showing "plainly and unmistakenly" that plaintiffs' primary duties were directly related to the management or general business operations of their employer, *see Spradling*, 95 F.3d at 1495, summary judgment is inappropriate.

### B. Whether Plaintiffs Exercised Discretion and Independent Judgment on Matters of Significance

Defendant also fails to establish that there are no undisputed materials facts regarding whether plaintiffs' primary duties as claims adjusters included "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). As explained by the DOL regulations,

> To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.

29 C.F.R. § 541.202(a).

> The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but is not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

■ Employees "can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review." *In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*, 2007 WL

2936319, at *9 (citing 29 C.F.R. § 541.202(c)).

In the 2002 Opinion Letter, the DOL determined that the claims adjusters in question would qualify for the administrative exemption because they

exercise a great deal of discretion in deciding how to handle all types of claims. They are not merely pursuing a standardized format for resolving claims, but rather are using their own judgment about what the facts show, who is liable, what a claim is worth, and how to handle the negotiations with either a policyholder or a third-party claimant in order to achieve a successful resolution.

2002 WL 32406601, at *4. In a subsequent opinion letter (the "2005 Opinion Letter"), the DOL discussed whether "junior-level claims adjusters" may qualify for the administrative exemption, and determined that, unlike the claims adjusters in the 2002 Opinion Letter, the exemption was inapplicable to them because they did not exercise discretion and independent judgment with respect to matters of significance. 2005 WL 330610, at *1, 4 (Dep't of Labor, Jan. 7, 2005). The 2005 Opinion Letter was based on the following factual predicates:

the junior-level claims adjusters' work constitutes the day-to-day carrying out of the business affairs of the Office and ... these adjusters are not involved in determining the overall course or policies of the Office or in running the business of the Office. The vast majority of the junior-level claims adjusters' work consists of conducting telephone interviews from a list of prepared questions in order to determine whether to accept or deny a workers' compensation claim for benefits, and filling out preprinted forms needed to make or deny payments. You state that their claim form processing duties involve the routine, re-

current and repetitive tasks of collecting information usually obtained by telephone and from submitted documents. Completion of these forms requires only the level of skill needed to apply well-established techniques, procedures or specific standards usually described on the face of the forms.

The junior level claims adjusters do not perform investigations in person and never visit the scene of an accident. In terms of the exercise and independent judgment criteria, you state that junior-level claims adjusters may only make payments to claimants and health care providers when such payments are clearly appropriate and not scheduled for dispute resolution. If questions arise as to the appropriateness of payments, junior-level claims adjusters must receive approval either from their supervisors or from the General Counsel's office. All discretion exercised by junior-level claims adjusters is circumscribed by, and in accordance with, established policies. They do not review policies to determine whether there is coverage as all state employees serviced by the Office are covered. They also do not make determinations as to questions of liability, percentages of comparative fault, and negligence. Questions of third party liability or subrogation are handled by either the General Counsel or the Office of the Attorney General.

The junior-level claims adjusters may only approve a payment of indemnity benefits to a claimant without supervisory approval if the payment is under $1,500 and when these benefits are clearly appropriate based on their investigation of the facts. All medical benefits must be pre-authorized by an outside contractor for payments exceeding $500 before any adjuster may pay them. Indemnity benefits are based on established statutory formulas, and medical

payments are based on statutory fee guidelines.

The junior-level claims adjusters have no authority to negotiate or make settlements of disputed claims. All claims-related negotiations are handled by supervising claims adjusters and other individuals. Junior-level claims adjusters do not perform any investigation related duties such as on-site visits, inspection of damages and taking of photos.

2005 WL 330610, at *1–2.

Defendant states that plaintiffs' "duties included investigating claims and doing the research necessary to resolve claims," Docket No. 43 at 5, SUMF 20, and that, when investigating claims, plaintiffs

were expected to verify coverage; know whether or not the injured party was entitled to no-fault benefits; be aware of state laws in both the state where the loss occurred and the policy state; attempt to recognize all exposures; set and adjust all reserves promptly; consider policy stacking or coordination; determine whether the claimed injury was reasonable, necessary, and accident related; collect medical records; investigate medical, accident, and claims history; and ensure that indemnification and

subrogation potential is properly identified.

Docket No. 43 at 6, SUMF 21.[6] Plaintiffs submit affidavits in which they assert that they did not investigate claims except in very limited circumstances. Docket No. 50 at 3–4; Docket No. 50–1 at 6, ¶ 18; Docket No. 50–2 at 3, ¶ 6. Ms. Hinely states in her affidavit that she

did not act as an investigator. I had no time to check on a customer who was "overtreating" with a chiropractor. On a handful of occasions, I googled an insured's name and checked to see if facebook or some other reference might indicate their physical activities. I did that on my own since I had been a Liability Claims Adjuster, but there was no time to do that on more than a few occasions, and it was beyond my job duties.

Docket No. 50–1 at 6, ¶ 18. Mr. Sanchez states in his affidavit that he

did not investigate claims, at least not in the ordinary sense of "investigate," since I simply took down information from the insured or other person on the phone. I did not locate or interview witnesses, seek prior medical records of other claims or do any type of background checks. I performed duties very similar to when I was an hourly worker, non-

---

6. Defendant offers statements from plaintiffs' resumes as undisputed facts relating to plaintiffs' actual job duties. Docket No. 43 at 5, ¶¶ 17–18. While these statements may be admissible at trial, the Court does not find them persuasive or helpful for purposes of determining the undisputed facts as to what plaintiffs' job duties actually were. *See Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 400 (6th Cir. 2004) ("We focus on evidence regarding the *actual day-to-day activities* of the employee rather than more general job descriptions contained in resumes, position descriptions, and performance evaluations") (citation omitted); *see also Morrison v. Ocean State Jobbers, Inc.*, 290 F.R.D. 347, 362 n.10 (D. Conn. 2013) (declining to use plaintiffs' resumes to discredit their deposition testimony because

"[i]t is unsurprising that an employee would choose to emphasize in a resume managerial tasks, such as hiring or training new employees, over non-managerial tasks, such as cleaning the bathrooms or bringing in carriages, even where the managerial tasks took up significantly less of the employee's time"); *Knight v. Valley Country Club*, No. 14-cv-02470-PAB-MJW, 2015 WL 7014371, at *2 (D. Colo. Nov. 12, 2015) ("At most, defendants have made the unremarkable observation that plaintiff emphasized certain of her duties in documents analogous to a professional resume, which is minimally relevant to whether plaintiff's 'primary duty' was managerial or related to VCC's general business operations.").

exempt, in the call center with American Family.

Docket No. 50–2 at 3, ¶ 6. Viewing these facts in a light most favorable to plaintiffs, a reasonable juror could find that, while claims investigation was a matter of importance to defendant, plaintiffs did not exercise discretion and independent judgment in performing it.

Regarding the interpretation of insurance policies and the evaluation of insurance coverage, which the 2005 DOL Opinion Letter analyzes, see 2005 WL 330610, at *1, plaintiffs state in their affidavits that they had no discretion to limit or reduce the amount of a claim. Docket No. 50–1 at 4, ¶¶ 9–10; Docket No. 50–2 at 3–4, ¶¶ 10–11. Ms. Hinely states she

> exercised no discretion as to trying to limit or reduce the amount of a claim, I simply checked to see if the claims fit the requirements that the company told me to follow .... I did not interpret insurance policies or insurance coverage. Instead, I was told what the elements were and what I was to look for.

Docket No. 50–1 at 4, ¶¶ 9–10. Mr. Sanchez's affidavit contains an almost verbatim statement. See Docket No. 50–2 at 3–4, ¶¶ 10–11. Viewing these facts in a light most favorable to plaintiffs, a reasonable juror could conclude that, while interpretation of insurance policies and coverage evaluation was a matter of importance to defendant, plaintiffs did not exercise discretion and independent judgment in performing those duties.

Regarding the issue of setting reserves, which is discussed in the 2005 Opinion Letter, see 2005 WL 330610, at *2, defendant states that plaintiffs established "reserves for their claims, based on their analysis of what American Family's potential financial exposure was for each claim." Docket No. 43 at 7, SUMF 23. Ms. Hinely states in her affidavit that she "did not set reserves, since these were controlled by the policy limits and the statutes had limits." Docket No. 50–1 at 3, ¶ 7. Mr. Sanchez states in his affidavit that he "did not set reserves on files. The liability limits on the policies would cover this." Docket No. 50–2 at 4–5, ¶ 13. Viewing these facts in a light most favorable to plaintiffs, a reasonable juror could conclude that, while reserves were a matter of importance to defendant, plaintiffs did not exercise discretion and independent judgment concerning reserves.

Regarding the use of forms and templates as discussed in the 2005 DOL Opinion Letter, see 2005 WL 330610, at *2, defendant states that plaintiffs "were expected to use critical thinking skills, to base decisions on information gathered, and not to rely on templates." Docket No. 43 at 7, SUMF 26. Ms. Hinely testified in her deposition that, when contacting an insured regarding a claim, she

> would have a template that I would have to use to go over a series of questions about what kind of injuries they were claiming from the accident. They wanted us to go over the medical forms and they created a form, a template that we would use.
>
> So it was like basically an answer/question basis. You know, what kind of injuries do you have. You know, what's your date of birth, what's your address? Are you a Medicare recipient. Just like a very basic format that we had to complete.
>
> And so I would just ask them, according to the template, the questions that were on there.

Docket No. 50–4 at 18–19 (Hinely Depo. at 132:10–133:2). In his affidavit, Mr. Sanchez states that he "used a format or template for questions and information that my manager helped me develop so we could be efficient." Docket No. 50–2 at 3, ¶ 8. A reasonable juror could find that plaintiffs

did not exercise discretion and independent judgment based on their use of templates and forms.

As identified above, there are multiple factual disputes regarding plaintiffs' actual job duties and the degree of independent judgment and discretion they exercised in the performance thereof that preclude summary judgment. *See Harper v. Gov't Emp. Ins. Co.*, 754 F.Supp.2d 461, 465–66 (E.D.N.Y. 2010) (holding that the court "cannot determine this matter based upon the summary judgment papers presently before the court. There is sharp disagreement concerning critical facts regarding the scope of Plaintiff's duties, and whether those duties allow Plaintiff to exercise the discretion and judgment required to characterize her position as exempt."); *see also Chase v. Farmers Ins. Exch*, 129 P.3d 1011, 1014–15 (Colo. App. 2004) (denying summary judgment "[b]ecause resolution of whether plaintiffs fall within the administrative exemption requires factual determinations as to the nature of the claims representatives' primary duty and as to the degree, if any, to which they used independent judgment and discretion, and because factual issues remain in dispute" in light of evidence submitted by plaintiffs showing that they "did *not* have authority to deny coverage, but, instead, were required to have the branch claims manager sign any letter denying coverage.") (emphasis in original) (citing *Daniels v. Caleel + Hayden, L.L.C.*, 72 P.3d 466 (Colo. App. 2003)).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that American Family's Motion for Summary Judgment and Supporting Brief [Docket No. 43] is **DENIED.**